**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

SHANNON ELIZABETH W.,

                           Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

No. 5:24-CV-944
(MAD/PJE)

─────────────────────────────

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| Olinsky Law Group<br>250 South Clinton Street, Suite 210<br>Syracuse, New York 13202<br>Attorneys for plaintiff | HOWARD D. OLINSKY, ESQ. |
| Social Security Administration<br>Office of the General Counsel<br>6401 Security Boulevard<br>Baltimore, Maryland 21235<br>Attorneys for defendant | JASON P. PECK, ESQ. |

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Shannon Elizabeth W.[2] ("plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking review of a decision by the Commissioner of the Social Security

Administration ("the Commissioner") denying her application for disability insurance

---

[1] This matter was referred to the undersigned for Report-Recommendation and in accordance with General Order 18 and N.D.N.Y. L.R. 72.3(e).

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

benefits ("DIB") and supplemental security income ("SSI").  *See* Dkt. No. 1.  Plaintiff

moves for the Commissioner's decision to be vacated and remanded for further

proceedings.  *See* Dkt. No. 9.  The Commissioner moves to affirm.  *See* Dkt. No. 12.[3]

Plaintiff filed a reply.  *See* Dkt. No. 13.  For the following reasons, it is recommended

that plaintiff's cross-motion be granted, the Commissioner's cross-motion be denied,

and the Commissioner's decision be reversed and remanded for further proceedings.

## I. **Background**

On December 14, 2021, plaintiff filed Title II and Title XVI applications for DIB

and SSI benefits, alleging a disability onset date of September 18, 2021.  *See* T. at 63,

242-50.[4]  On January 27, 2022, the Social Security Administration ("SSA") denied

plaintiff's claims.  *See id*. at 127-31.  On February 3, 2022, plaintiff sought

reconsideration, which the SSA denied on March 24, 2022.  *See id.* at 132-41.  Plaintiff

appealed and requested a hearing.  *See id*. at 148-49.  On September 8, 2023,

Administrative Law Judge ("ALJ") Mary Jane Pelton held a hearing.  *See id*. at 34-62.

On October 19, 2023, the ALJ issued an unfavorable decision.  *See id*. at 15-33.  On

June 24, 2024, the Appeals Council denied plaintiff's request for review, and the

decision became final.  *See id*. at 1-6.  Plaintiff timely commenced this action on July

31, 2024.  *See* Dkt. No. 1.

## II. **Legal Standards**

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.
[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program, located at the header of each page.

A.  **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotations marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by

substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id.* (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience."  *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id*. (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had "not engaged in substantial gainful activity since September 18, 2021, the alleged onset date." T. at 18. At step two, the ALJ determined that plaintiff "ha[d]

the following severe impairments: depressive disorder, anxiety disorder, post-traumatic stress disorder, degenerative joint disease of the right knee, and obesity." *Id*.  At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*.

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she should not climb ladders, ropes, or scaffolds; she should not kneel or crawl; she should have no exposure to hazards such as unprotected heights and dangerous moving machinery; she can understand, remember, and carry out simple instructions; she can use judgment to make simple work-related decisions; she should work in a job with occasional changes in the routine work setting; she cannot perform work requiring a specific production rate or perform work that requires hourly quotas; and she could have occasional interaction with co-workers, supervisors, and the public.

T. at 22.[5]  At step four, the ALJ determined that plaintiff "is unable to perform any past relevant work." *Id*. at 26.  At step five, the ALJ concluded that, "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that

---

[5] Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

exist in significant numbers in the national economy that the claimant can perform."  *Id*. The ALJ concluded that plaintiff "has not been under a disability . . . from September 18, 2021[,]" the alleged onset date, to the date of her decision.  *See id*. at 27.

## IV.  **Discussion**

### A.  **The Parties' Arguments**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to fully develop the record.  *See* Dkt. No. 9 at 5, 8.  Specifically, plaintiff argues that (1) the record lacks a medical source opinion addressing her physical limitations; and (2) in addressing her mental limitations, the ALJ "relied on the stale and unsupported opinion of the state agency medical consultant[s] rather than fully developing the record with a reliable expert medical opinion about Plaintiff's remaining work-related abilities."  *Id*. at 5.  Plaintiff claims that Dr. Leiber-Diaz and Dr. Jurgia's opinions are stale because they "predated the ALJ's decision by over eighteen months, during which time [she] continued to experience symptoms and receive treatment."  *Id*. at 6.  Plaintiff asserts that Drs. Leiber-Diaz and Jurgia did not review Exhibits ("Ex.") 6F, 7F, 8F, and 9F, and these exhibits demonstrate that she experienced "ongoing and increasing severity of [her] mental health condition."  *Id*.  Plaintiff states that the "medical evidence contained in Exhibit 6F materially affects evaluation of the medical opinions as the records contain observations of [her] full mental health status; the records clearly do not document someone with only 'normal' examinations as claimed by the ALJ[,]" and these records were not available to the state consulting examiners.  *Id*. at 8 (citing T. at 24).

The Commissioner argues that the ALJ's determination is supported by substantial evidence.  *See generally* Dkt. No. 12.  The Commissioner states that ALJ correctly concluded that Dr. Leiber-Diaz and Dr. Jurgia's opinions as to plaintiff's mental work-related limitations were "'consistent with the evidence of record that was available to them, as well as with course of the claimant's treatment for her psychiatric condition since the alleged disability onset date.'"  *Id*. at 7 (quoting T. at 25-26).  They further assert that plaintiff failed to meet her burden of demonstrating that Drs. Lieber-Diaz and Jurgia's opinions are stale.  *See id*. at 9-13.

B.  **Duty to Develop the Record**

1. **Legal Standard**

"'Whether the ALJ has met his duty to develop the record is a threshold question' that the Court must determine '[b]efore reviewing whether the Commissioner's final decision is supported by substantial evidence[.]'"  *Joseph J. B.*, 2024 WL 4217371, at *4 (quoting *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016)).  "While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit."  *Gillard v. Colvin*, 5:11-CV-1173 (GLS), 2013 WL 954909, at *2 (N.D.N.Y. Mar. 12, 2013) (citation omitted).  "Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence."  *Id*. (citing 20 C.F.R. § 404.1520b(a)).  "Consistent with that notion, where there are no 'obvious gaps' in the record, the ALJ is not required to seek additional information."  *Id*. (quoting *Rosa v. Callahan,* 168 F.3d 72, 79 n.5 (2d Cir. 1999)); *see also Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 537-38 (S.D.N.Y.

2015) (first citing *Rosa*, 168 F.3d at 79 n.5 (2d Cir. 1999), then citing *Perez v. Chater*, 77

F.3d 41, 48 (2d Cir. 1996)).  "The ultimate question is whether the administrative record

is 'robust enough to enable a meaningful assessment of the particular conditions on

which the [plaintiff] claims disability.'"  *Joseph J. B.*, 2024 WL 4217371, at *4 (quoting

*Sanchez v. Colvin*, No. 13-CV-6303 (PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20,

2015) (additional citations omitted)).  "The ALJ's duty to develop the record is enhanced

when the disability in question is a psychiatric impairment."  *Michael D. v. Comm'r of

Soc. Sec.*, No. 3:22-CV-104 (CFH), 2023 WL 3601718, at *3 (N.D.N.Y. May 23, 2023)

(quoting *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704 (JPO), 2015 WL 321832, at

*22 (S.D.N.Y. Jan. 23, 2015) (additional citations omitted)).

## 2. **Analysis**

### a. **Development of Record**

In determining plaintiff's physical RFC, the ALJ found "the treating records of the

primary care and orthopedic providers of the claimant to be persuasive."  T. at 25 (citing

Ex. 2F (T. at 450-570); 3F (T. at 571-674); 6F (T. at 710-952).  The ALJ explained that

the

> [p]hysical exams of the claimant by her primary care providers have been
> essentially within normal limits (Exhibits 2F/57-58, 117; 3F/41-42; 6F/115-
> 16, 122-23, 127-28, 132-33, 137-38, 143, 149). Although physical exams of
> the claimant have shown her to have some tenderness in her right knee,
> the claimant's right knee has also been found upon exam by her orthopedic
> providers to be neurologically intact, to have a good range of motion, and
> to have intact strength (Exhibits 8F, 9F). In addition, the claimant has shown
> improvement in her right knee during the course of physical therapy (Exhibit
> 7F). For all of the foregoing reasons, these treating records provide support
> for, and are consistent with, the undersigned's conclusion that the claimant
> retains the ability to perform light exertional work with some postural and
> environmental restrictions.

*Id*.

The administrative transcript lacks any medical source opinion addressing plaintiff's physical RFC.  *See generally* Dkt. No. 8.  The ALJ failed to explain how bare medical records, diagnostic test results, plaintiff's subjective reports of her symptoms, and her various diagnoses amount to substantial evidence in support of the RFC.  *See Gonzalez v. Comm'r of Soc. Sec.*, No. 21-CIV-800 (VB/JCM), 2022 WL 3348386, at *11 (S.D.N.Y. May 27, 2022), *report and recommendation adopted sub nom. Gonzalez v. Kijakazi,* No. 21-CV-800 (VB), 2022 WL 3348525 (S.D.N.Y. Aug. 12, 2022) (quoting *Kinslow v. Colvin*, No. 5:12-CV-1541 (GLS/ESH), 2014 WL 788793, at *5 (N.D.N.Y. Feb. 25, 2014)) ("ALJ is not qualified 'to assess residual functional capacity on the basis of bare medical findings.'"); *Kinslow*, 2014 WL 788793, at *5 (citing *Hazlewood v. Commissioner of Soc. Sec.,* No. 6:12-CV-798 (DNH/ATB), 2013 WL 4039419, at *5 (N.D.N.Y. Aug. 6, 2013) (additional citation omitted)) ("[W]hen medical findings merely diagnose impairments without relating diagnoses to specific residual physical, mental and other work-related capacities, an administrative law judge's determination of residual functional capacity without a medical advisor's assessment of those capacities is not supported by substantial evidence.").

"[A]lthough the RFC determination is an issue reserved for the ALJ, an ALJ 'cannot arbitrarily substitute [her] own judgment for [a] competent medical opinion.'" *Balaguer Perez v. Berryhill*, No. 17-CV-3045 (JMA), 2019 WL 1324949, at *5 (E.D.N.Y. Mar. 25, 2019) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citation omitted)); *see Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion

has improperly substituted his own opinion for that of a physician, and has committed legal error."). "Stated another way, when no medical source opinion supports an administrative law judge's residual functional capacity finding, that finding lacks substantial evidentiary support." *Kinslow*, 2014 WL 788793, at *5 (citation omitted).

Here, "[i]nstead of relying on a medical opinion, the ALJ determined Plaintiff's RFC based on her own interpretation of the medical evidence in the record and Plaintiff's testimony." *Balaguer Perez*, 2019 WL 1324949 at *6. "Thus, as plaintiff contends, without 'substitut[ing her] own judgment for competent medical opinion,' it was impossible, based on this record, for the ALJ to reach the RFC determination contained in the hearing decision." *Melanie M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-571 (CFH), 2020 WL 4335495, at *6 (N.D.N.Y. July 28, 2020) (quoting *Balsamo*, 142 F.3d at 81 (2d Cir. 1998)); *see also House v. Astrue,* No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation omitted) ("Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate."). As there is no medical source opinion regarding plaintiff's physical limitations to be able to support the ALJ's physical RFC, the undersigned recommends remanding this matter to the Commissioner to obtain a medical source opinion addressing plaintiff's physical RFC.

b. **Mental RFC**

i. **RFC Legal Standard**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations,

symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, 2024 WL 4217371, at \*8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at \*4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone*, 70 F. Supp. 2d at 150, then citing 20 C.F.R. §§ 404.1545, 416.945)). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Id.* (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id.* (quoting *Martone*, 70 F. Supp. 2d at 150 (citations omitted)).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at \*8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id.* (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the

Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted).

"For claims filed on or after March 27, 2017, the ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.'" *Lena Nicole H.*, 2024 WL 4133819, at *5 (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "Instead, the ALJ will evaluate the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). "Of those, the 'factors of supportability . . . and consistency . . . are the most important factors.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

"An ALJ is specifically required to explain how [he or she] considered the supportability and consistency factors for a medical opinion." *Lena Nicole H.*, 2024 WL 4133819, at *5 (quoting 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2) (internal

quotation marks omitted)); *see also Matthew S. v. Comm'r of Soc. Sec.*, No. 6:23-CV-281 (AMN/MJK), 2024 WL 2053412, at *3 (N.D.N.Y. Mar. 6, 2024), *report and recommendation adopted sub nom. Matthew D. S. v. Comm'r of Soc. Sec.*, No. 6:23-CV-281 (AMN/MJK), 2024 WL 1635684 (N.D.N.Y. Apr. 16, 2024) (quoting *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021) (citing 20 C.F.R. § 404.1520c(b)(2))) ("An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision.").

"With respect to supportability, [t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Lena Nicole H.*, 2024 WL 4133819, at *5 (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)) (internal quotation marks omitted). "With respect to consistency, [t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)) (internal quotation marks omitted).

ii. **Mental RFC Analysis**

In determining plaintiff's mental RFC, the ALJ relied on the opinions of the consultative state agency review psychologists, Dr. Leiber-Diaz and Dr. Jurgia, finding them "generally persuasive." T. at 25 (citing Ex. 2A, T. at 74; Ex. 4A, T. at 89; Ex. 6A, T. at 106; Ex. 8A, T. at 123). The ALJ explained that these opinions were supported by

"program knowledge and expertise, their review of the available evidence of record, and the detailed explanation they furnished for their opinion" and "consistent with the evidence of record that was available to them, as well as with course of the claimant's treatment for her psychiatric condition since the alleged disability onset date." *Id*. at 25-26.

"[A]n ALJ should not rely on 'stale' [medical source] opinions . . . ." *Steve P. v. Comm'r of Soc. Sec.*, No. 19-CV-492 (MWP), 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021) (quoting *Robinson v. Berryhill*, No. 1:17-CV-362 (LJV/JJM), 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018)). "In general, medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Michael R. D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-215 (JLS), 2023 WL 3869022, at *4 (W.D.N.Y. June 7, 2023) (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order)) (internal quotation marks omitted). "Medical opinions are rendered 'stale' by a 'new significant diagnosis' or 'significant deterioration' in the plaintiff's condition." *Angele J. W. v. Comm'r of Soc. Sec.,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204301, at *5 (N.D.N.Y. July 24, 2024), *report and recommendation adopted,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204017 (N.D.N.Y. Sept. 16, 2024) (quoting *Benitez v. Comm'r of Soc. Sec.*, No. 23-CV-1327 (ARL), 2024 WL 1332612, at *8 (E.D.N.Y. Mar. 28, 2024) (quoting *Andrea G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1253 (TWD), 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022))); *see Carney v. Berryhill*, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("[A] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition."). The passage of time does

not render a medical source opinion "stale" as long as "the subsequent evidence does

not undermine [the opinion evidence]." *Steve P.*, 2021 WL 307566, at *5 (quoting

*Hernandez v. Colvin*, No. 15-CV-6764 (CJS), 2017 WL 2224197, at *9 (W.D.N.Y. May

22, 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary

order) (additional citation omitted))).

In January and March 2022, Dr. Leiber-Diaz and Dr. Jurgia opined that plaintiff

"retained the ability to perform the basic mental demands of unskilled work in a setting

that had limited contact with others."  T. at 74, 89, 106, 123.  Dr. Leiber-Diaz and Dr.

Jurgia based their opinions on plaintiff's May 2021 to March 2022 medical records.  *See

id*. at 66-67, 74, 81-82, 89, 97-98, 105-106, 113-15, 122-123.  Dr. Leiber-Diaz and Dr.

Jurgia listed plaintiff's symptoms as (1) anxious mood; (2) fair-to-poor insight; (3) poor

judgment; (4) bipolar disorder, anxiety with panic attacks, and posttraumatic stress

disorder ("PTSD"); (5) manic episodes; (6) paranoid behavior; (7) suicidal ideation and

attempts, requiring multiple hospitalizations; (8) elevated affect; (9) over-productive

speech; (10) depressed affect; and (11) daily anxiety that can last for five-to-sixty

minutes.  *See id*.

The administrative transcript contains additional treatment records from March

2022 to June 2023 that Dr. Leiber-Diaz or Dr. Jurgia could not have reviewed because

they were generated after the doctors issued their opinions.  *See* T. at 710-860.  These

additional records indicate that plaintiff continued to receive mental health treatment and

suffered from what appear to be changes or increased symptomology.  In March 2022,

plaintiff reported "no improvement in decreasing symptoms of anxiety."  *Id*. at 711.  In

April 2022, plaintiff was diagnosed with having a severe manic episode with psychotic

features.  *See id*. at 716.  Later that month, plaintiff reported changes in the side effects

from her medications, specifically, that her Aristada wore off one week prior to its next

dose and caused her to have a "blank state" and "funky thoughts," and her Clonidine

caused her to be "more irritable and angry."  *Id*. at 718.  Doctors then prescribed her

Aristada injections at an increased frequency.  *See id*.  In May 2022, doctors changed

plaintiff's medications and prescribed Lithium.  *See id*. at 724.

In December 2022, plaintiff reported, "I feel nuts again."  T. at 765.  Plaintiff

complained of "having a lot of ups and [d]owns, feeling irritable, angry, depressed, [and]

'all over the place.'"  *Id*.  Doctors adjusted her medications and increased her Lithium

dosage for one-to-two weeks.  *See id.*  Later that month, plaintiff was hospitalized for

depression and anxiety for ten days.  *See id*. at 771.  In January 2023, plaintiff reported

suffering from manic behaviors.  *See id*.  In February 2023, plaintiff reported that she

"had a panic attack when I was shopping today."  *Id*. at 787.  In March 2023, plaintiff

claimed she suffered from manic symptoms, felt irritable, and had little patience when

interacting with her daughter.  *See id*. at 799.  Although plaintiff reported improvements

and decreased symptomology at various points between March 2022 to June 2023,

there were also subsequent increases in symptomology.  *See id*. at 728, 742, 755, 793,

814, 820.

Further, Dr. Leiber-Diaz and Dr. Jurgia's opinions are based on an incomplete

medical record at the time their assessments were issued.  *See Michael R. D.*, 2023 WL

3869022, at *4; *Robert T. S. v. Comm'r of Soc. Sec.*, No. 5:21-CV-38 (CFH), 2022 WL

1746968, at *13 (N.D.N.Y. May 31, 2022) (quoting *Jason J. v. Kijakazi*, No. 1:20-CV-

1298 (NAM), 2021 WL 5356308, at *8 (N.D.N.Y. Nov. 17, 2021) (quoting *Fambo v.*

*Comm'r of Soc. Sec.*, 474 F. Supp. 3d 603, 608 (W.D.N.Y. 2020)) ("In general, an ALJ should not rely on medical source opinions that are . . . 'based on an incomplete medical record.'").  As stated above, Dr. Leiber-Diaz and Dr. Jurgia based their opinions on plaintiff's medical records from May 2021 to March 2022.  *See* T. at 66-67, 74, 81-82, 89, 97-98, 105-106, 113-15, 122-123.

The administrative transcript also contains treatment records documenting that in April 2021, plaintiff (1) was placed on an involuntary psychiatric hold, and (2) admitted herself to the emergency room due to mental health symptoms.  *See* T. at 861-62.  At this time, plaintiff's mental health symptoms were recorded as rapid and incoherent speech, anxious mood, flattened affect, and disorganized and illogical thought processes.  *See id.* at 878-79.  In May 2021, plaintiff returned to the hospital after suffering from paranoia, visual hallucinations, and flashbacks to prior traumatic events. *See id.* at 899.  In June 2022, plaintiff reported "no improvement in decreasing symptoms of anxiety."  *Id.* at 923.  In December 2022, plaintiff was hospitalized again after reporting "worsening depression with suicidal ideations."  *Id.* at 926.  Plaintiff stated, "I was at the point where I had to seek help or I would have hurt myself."  *Id.* at 935.  Plaintiff reported poor sleep, poor concentration, hopelessness, and experiencing one panic attack every other day for the prior two weeks.  *See id.*

Therefore, the undersigned concludes that Dr. Leiber-Diaz and Dr. Jurgia's opinions are based on an incomplete medical record and are stale as they do not address any changes or potential deterioration in plaintiff's mental health condition after their opinions were issued.  *See Michael R. D.*, 2023 WL 3869022, at *4; *Angele J. W.*, 2024 WL 4204301, at *5; *Steve P.*, 2021 WL 307566, at *5 (quoting *Davis v. Berryhill*,

No. 6:16-CV-6815 (MAT), 2018 WL 1250019, at *3 (W.D.N.Y. Mar. 11, 2018)) ("Medical

source opinions that are stale and based on an incomplete medical record may not be

substantial evidence to support an ALJ['s] finding."); *Jones v. Comm'r of Soc. Sec.*, No.

10-CV-5831 (RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (holding that the

ALJ should not have relied on a medical opinion because "by plaintiff's hearing date, the

disability examiner's opinion that Jones could perform light work was 1.5 years stale,

and did not account for her deteriorating condition."); *Mattison v. Comm'r of Soc. Sec.*,

No. 1:18-CV-1339 (EAW), 2020 WL 13558228, at *4 (W.D.N.Y. Jan. 29, 2020)

(remanding because "the lack of any non-stale medical opinion regarding Plaintiff's

mental impairments created an obvious gap in the record that the ALJ was obligated to

fill."); *Maxwell H. v. Comm'r of Soc. Sec.*, No. 1:19-CV-148 (LEK/CFH), 2020 WL

1187610, at *6-7 (N.D.N.Y. Mar. 12, 2020) (remanding and ordering a new medical

source statement where the ALJ relied on a stale medical opinion to determine the

plaintiff's mental RFC.); *Cf. Tederrell G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1129

(GLS/CFH), 2022 WL 827787, at *14 (N.D.N.Y. Feb. 22, 2022), *report and

recommendation adopted,* No. 5:20-CV-1129 (GLS/CFH), 2022 WL 823664 (N.D.N.Y.

Mar. 18, 2022) (holding that medical opinions from 2016 were not rendered stale by

records from 2018 and 2019 because the "ALJ accounted for the worsening in plaintiff's

right wrist by limiting him to frequent handling of the right upper extremity . . . .

Therefore, although neither medical opinion reached right-handed limitations, the ALJ's

decision to include the limitation is supported by the record."); *Laura Anne H. v. Saul*,

No. 6:20-CV-397 (TWD), 2021 WL 4440345, at *6 (N.D.N.Y. Sept. 28, 2021) (declining

to remand and holding that a medical opinion was not stale despite the plaintiff's

"subsequent treatment and surgeries," because the "[p]laintiff neither demonstrated additional associated functional limitations that undermine[d the medical] opinion, nor identified any relevant evidence post-dating [the medical] opinion that the ALJ failed to consider."); *Luis M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1151, 2021 WL 168475, at *3 (W.D.N.Y. Jan. 19, 2021) (declining to remand the ALJ's decision where "[the p]laintiff cites evidence in the record which he argues supports a finding of worsening symptoms; however, the ALJ discussed the evidence cited by [the p]laintiff and concluded otherwise."); *Johnson v. Comm'r of Soc. Sec.*, No. 1:19-CV-706 (CJS), 2020 WL 5104550, at *8 (W.D.N.Y. Aug. 31, 2020) (holding that a medical consultative report was not stale because although it was issued prior to the plaintiff's motor vehicle accident and surgery, "there is substantial evidence (normal clinical findings) to support the ALJ's determination that [the p]laintiff's condition did not worsen following the consultative exam."). Accordingly, the undersigned recommends remand to consider the impact of plaintiff's mental health records that were not a part of Dr. Leiber-Diaz and Dr. Jurgia's assessments.

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 9) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 15) be **DENIED**, and the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report-Recommendation and Order; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

 **IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.

Dated: July 21, 2025
    Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge